UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM ARTHUR HODSON,

    Plaintiff,

v.                                                                    Case No. 1:18-cv-73
                                                                      Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of April 6, 2014, primarily due to the residual symptoms of a head injury. PageID.76, 314. Plaintiff identified his disabling conditions as: traumatic brain injury (TBI) with post-concussive symptoms; depression; hypertension; diabetes; decrease in cognitive skills; memory problems; hypersensitivity to light and sound; frequent severe headaches; fatigue; and, bipolar disorder. PageID.324. Prior to applying for DIB, plaintiff completed two years of college and had past employment for nearly 25 years as a corrections officer. PageID.325. An Administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 18, 2017. PageID.70-84. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 6, 2014 and meets the insured status requirements of the Social Security Act through December 31, 2019. PageID.72. In reaching this determination, the ALJ found that plaintiff

3

earned some income after that date from two unsuccessful attempts to return to work between December 2014 and February 2015. PageID.72.

At the second step, the ALJ found that plaintiff had severe impairments of: lumbar and cervical degenerative disc disease; post-concussive syndrome; migraines; posttraumatic stress disorder (PTSD); major depression; and, bipolar disorder. PageID.73. At the third step, the ALJ found that through his date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.73.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can frequently kneel, crouch, stoop, balance, and crawl. He can frequently climb ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds. He can never tolerate exposure to vibration, unprotected heights, or moving machinery parts. He requires a moderate noise level as defined in the Dictionary of Occupational Titles and Selected Characteristics of Occupations. The claimant can understand, remember, and carryout simple instructions and make simple, work-related decisions.

PageID.75. The ALJ also found at the fourth step that plaintiff is unable to perform his past relevant work. PageID.82.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the medium exertional level in the national economy. PageID.83-84. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy including kitchen helper (140,000 jobs), dining room attendant (220,000 jobs), and stock handler (93,000 jobs). PageID.83. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from April 6, 2014 (the alleged onset date) through July 18, 2017 (the date of the decision). PageID.83-84.

## III. DISCUSSION

Plaintiff set forth three issues on appeal.

### A. The ALJ committed reversible error by not properly considering the opinions of plaintiff's treating physicians.

#### 1. Dr. Probes

Plaintiff contends that the ALJ improperly rejected the opinions of his treating psychiatrist, Lawrence Probes, M.D. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See*

*Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §404,1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ noted that plaintiff had treated with Dr. Probes for symptoms of PTSD and bipolar disorder, and that his symptoms did not prevent him from working prior to the April 2014 head injury. PageID.77. The ALJ addressed Dr. Probes' opinions with respect to plaintiff's mental condition after the head injury as follows:

> In October 2015, Dr. Probes submitted a statement indicating that the claimant's mental efficiency and functional capacity had declined dramatically since his April 2014 injury and that he had to expend a great deal of emotional energy to perform activities of daily living. Consequently, he experienced chronic fatigue and poor stamina. Dr. Probes asserted that the claimant was disabled. He could not sustain the attention, concentration, memory, or stamina needed to perform any job. He stated that the claimant's impairments were permanent and not expected to improve (10F/1). He affirmed his opinion in April 2017 (20F/2-3). He indicated that the claimant had good social skills and could appear capable; however, he stated that the claimant lacked the ability to manage the intense and sustained cognitive and emotional performance required in any gainful and competitive work scenario (20F/3). He added that the claimant had marked difficulty in the areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. He asserted that the claimant had achieved only marginal adjustment as defined by the mental listings (20F/4-7). As already discussed above [at step three], the claimant does not meet the B or C criteria of any mental listing. Moreover, Dr. Probes appears to base his opinion entirely on the claimant's subjective allegations rather than on his own treatment notes and observations. Dr. Probes generally categorized the claimant's bipolar disorder as being in full remission (7F/14, 68, 75; 9F/7; 15F/12). After the claimant's March 2015 hospitalization, his personal stressors resolved and he reported immediate significant improvement (9F/l). Subsequently, Dr. Probes noted only very mild symptoms of depression and anxiety (15F). Dr. Peltier confirmed that the claimant's depression was controlled and in remission (13F/6, 14). Further, Dr. Peltier did not test the claimant for cognitive deficits. He noted himself that the claimant reported having mild subjective cognitive difficulties. However, he observed that the claimant had no trouble communicating and exhibited adequate attention and concentration (7F/59, 66;

9F/3). Dr. Probes also noted that the claimant's speech was clear, coherent, well articulated, logical, and spontaneous (7F/73). Therefore, Dr. Probes' opinions are inconsistent with both the neuropsychological testing performed by Dr. Greene and with his own treatment notes. Therefore, I accord his opinions little weight.

PageID.81.[1]

Based on the record, the ALJ gave good reasons for the weight assigned to Dr. Probes' opinions with one exception, i.e., the period of time from the injury in April 2014 until May 13, 2015 (Exh. 9F/1), when Dr. Probes noted that after the hospitalization, plaintiff's symptoms had "fallen to the very mild range." PageID.697. During this time frame, which lasted more than one year, plaintiff made two unsuccessful work attempts and was hospitalized. As applied to this time frame, Dr. Probes' opinion was entitled to controlling weight, because it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. *See Gayheart*, 710 F.3d at 375. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Probes' opinions and the medical record with respect to a period of time commencing from the alleged onset date in April 2014 until Dr. Probes found plaintiff's symptoms to have fallen to the very mild range in May 2015.

### 2. Dr. Peltier

The ALJ's decision traced plaintiff's treatment history with Dr. Peltier commencing with the date of the injury in April 2014. The ALJ addressed Dr. Peltier's opinions as follows:

---

[1] The Court notes that in late March 2015, plaintiff admitted himself into the hospital for thoughts of self-harm and depression related to his frustration in "dealing with the bureaucracy of trying to obtain various types of disability and unemployment benefits." PageID.77. The ALJ found that following his hospital stay, plaintiff reported significant improvement and that, "In May 2015, Dr. Probes observed that, 'immediately it was apparent' that the claimant was 'doing much better' (9F/1). The claimant reported symptoms only in the very mild range. The claimant attributed his improvement to the resolution of issues related to benefits and stopping work (9F/1)." PageID.77.

7

After the claimant's slip and fall accident, Dr. Peltier included his opinion on the claimant's ability to return to work as a corrections officer in almost every treatment note (4F/1-43). Expecting a quick recovery, Dr. Peltier initially wrote the claimant off work for several weeks to one month at a time (4F/25-43). In September 2014, Dr. Peltier returned the claimant to working part-time with no prisoner contact and no lifting, bending, or overhead work (4F/21-22). Thereafter, Dr. Peltier returned the claimant to full-time work as a corrections officer beginning October 20, 2014 (4F/17-18). The claimant did return to work and did well working in the "administration bubble" at the prison but was not able to cope with working in the monitoring room (4F/13-14). Dr. Peltier recommended that the claimant begin returning to normal duties slowly by first having limited contact with prisoners and working only in the "administration bubble" if allowed by his employer (4F/15). However, the prison was not able to accommodate Dr. Peltier's specific plan for the claimant's return to work. Therefore, Dr. Peltier returned the claimant to work without limitation beginning December 7, 2014 (4F/l 1-12). The claimant did return to work but stopped in March 2015 due to his symptoms (4F/5). At that time, Dr. Peltier opined that the claimant's postconcussive syndrome might be permanent and therefore, the claimant might not be able to return to work in the high stress environment of a prison guard (4F/7). In late March 2015, he noted that the claimant might benefit from being out of the prison environment and wrote him an off-work note until May 7, 2015 (4F/3). Because I find that a combination of the claimant's symptoms limit him to performing simple tasks, the claimant is unable to return to semiskilled work as a corrections officer. Therefore, I accord Dr. Peltier's opinion that the claimant is unable to return to work as a corrections officer significant weight. However, I accord little weight to his opinions indicating that the claimant could not lift, bend, reach overhead, or work with monitors. As discussed above, physical examination findings of record were normal and medication controlled his migraines (13F/6).

\* \* \*

In September 2016, Dr. Peltier submitted a statement opining that the claimant was disabled from any employment. He asserted that the claimant had great difficulty with multitasking, sustaining concentration, and decision-making. He could not tolerate bright lights or use a monitor without increasing his headache (12F/1; 13F/8,10). He reaffirmed his opinion in March 2017 and April 2017 (16F/1; 19F/1). In April 2017, Dr. Peltier added that the claimant also found loud noises physically painful. He also stated that the claimant had peripheral artery disease, degenerative disc disease, and arthritis that contributed to lower extremity pain and decreased his exercise tolerance (19F/1). I accord this opinion little weight. The record contains no objective medical evidence regarding peripheral artery disease (13F). Moreover, for the same reasons I accord little weight to the opinions of Dr. Probes and Dr. Greene, I also accord little weight to Dr. Peltier's opinion.

PageID.80-81.

As with Dr. Probes, the ALJ gave good reasons for the weight assigned to Dr. Peltier's opinions with one exception, i.e., the period of time from the injury in April 2014 until May 2015. In this regard, Dr. Peltier stated that that he "will take [plaintiff] off of work until 7 May" (Exh. 4F/3). PageiD.523. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Peltier's opinions and the medical record with respect to a period of time commencing from the alleged onset date in April 2014 until Dr. Peltier released plaintiff to work in May 2015.

**B. The ALJ committed reversible error by failing to properly consider all of plaintiff's severe impairments.**

Plaintiff contends that the ALJ erred by failing to consider his vision impairment (double vision) in determining the residual functional capacity (RFC). PageID.964. As an initial matter, the ALJ's determination of severe impairments did not include a vision impairment. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id*. "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). *See Hedges v. Commissioner of Social Security*, 725 Fed. Appx. 394, 395 (6th Cir. 2018) (failure to find

9

impairments "not severe" at step two is legally irrelevant, because the ALJ must consider the limiting effects of all impairments, including those that are "not severe" at step four).

Here, the ALJ's decision did not address plaintiff's vision problems at step two. PageID.73. There is some evidence that plaintiff had vision impairments related to both blurry vision and photosensitivity. Shortly after plaintiff fell on April 7, 2014, an ophthalmologist, Richard M. Brenz, M.D., examined plaintiff's complaint of blurry vision. PageID.815. The doctor found that the fall did not affect plaintiff's eyes, that his vision was good, and that "[t]he visual disturbance maybe related to the brain." PageID.817. In June 2014, neurologist Dr. Bloom commented that plaintiff had "photosensitivity in the left eye with hyper-reactivity and increased tearing". PageID.600. The ALJ later rejected plaintiff's claim that he suffered from double vision, stating that "the record does not contain any objective medical evidence supporting that the claimant has double vision as alleged" and that "[h]e presented to an ophthalmologist in April 2014 who concluded that the claimant retained good vision and had not sustained any injury to the eye (17F/4)." PageID.79. However, the ALJ never addressed plaintiff's light sensitivity, even though he wore dark glasses at the administrative hearing and testified that fluorescent lights, flashing lights, and moving lights cause him headaches. PageID.105-106.

In this instance, the ALJ did not find plaintiff's photosensitivity to be either a severe impairment or a non-severe impairment at step two, even though plaintiff identified hypersensitivity to light on his disability application, wore sunglasses during the administrative hearing, and testified that lights cause him headaches. PageID.90-124, 324. While the ALJ noted Dr. Bloom's conclusion regarding photosensitivity and light sensitivity, plaintiff's statement to Dr. Peltier in January 2015 "that the lights at the prison bothered him," and that plaintiff stopped

working in March 2015 due in part to "sensitivity to light and movement", PageID.77, the ALJ did not address the extent of plaintiff's alleged vision impairment in any detail.

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985). Here, the Court cannot trace the ALJ's reasoning with respect to the extent of plaintiff's vision impairments. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) with respect to this issue. On remand, the ALJ should provide a more complete discussion of plaintiff's alleged vision impairments.

### C. The ALJ committed reversible error by failing to ask the vocational expert (VE) accurate hypothetical questions.

Plaintiff's brief did not address this alleged error. Accordingly, the claim of error is denied.

### IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed (1) to re-evaluate the opinions of Dr. Probes and Peltier with respect to plaintiff's

condition from April 2014 through May 2015, and (2) to re-evaluate the extent of plaintiff's vision impairments.  A judgment consistent with this opinion will be issued forthwith.


Dated:  March 27, 2019                                          /s/ Ray Kent
                                                                United States Magistrate Judge